UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00747-RSE

TIFFANY H.                                                    PLAINTIFF

VS.

FRANK BISIGNANO,
*Commissioner of Social Security*[1]                          DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

The Commissioner of Social Security denied Claimant Tiffany H.'s ("Claimant's") applications for disability insurance benefits and supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 12; DN 13). The Commissioner filed a responsive Brief. (DN 20). Claimant filed a Reply. (DN 22). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

### I. Background

Claimant Tiffany H. has been trying to secure disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act for approximately ten years. Her original claims, filed in November of 2015, alleged

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

she became unable to work on March 15, 2013 due to depression, anxiety, bipolar disorder, diabetes, hypertension, diabetic retinopathy, high cholesterol, and seizures. (Transcript, hereinafter ("Tr."), 625-642, 705). The Administration denied her claims, and after a hearing, Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") issued an unfavorable decision on September 17, 2018. (Tr. 246-260). Claimant successfully appealed the ALJ's denial, and the Appeals Council remanded the case on April 19, 2019. (Tr. 270).

ALJ Pickett issued another unfavorable decision on November 29, 2019. (Tr. 279-294). Claimant again successfully appealed the ALJ's denial, and the Appeals Council remanded the case on February 3, 2021. (Tr. 306). On remand, ALJ Steven Collins ("ALJ Collins") issued a third unfavorable decision dated January 6, 2022. (Tr. 23-42). This time, Claimant's administrative appeal was unsuccessful, and the Appeals Council affirmed ALJ Collins' denial on December 2, 2022. (Tr. 7-10). Claimant then sought judicial review of the denial, which resulted in a voluntary remand from the Commissioner. *See* DN 14, 3:23-cv-00052-DJH (W.D. Ky. May 5, 2023). This was the third remand of the case.

ALJ Collins held a fourth administrative hearing on February 23, 2024, before issuing a fourth unfavorable decision on October 21, 2024. (Tr. 3877-3955). During the hearing, Claimant testified as follows. She is 52 years old and holds an associate degree. (Tr. 3914, 3921). She does not drive. (Tr. 3921). Her previous work includes nursery school attendant, bartender, and informal server. (Tr. 3923-24).

She receives infusions of prednisone and solumedrol every four weeks that take about four hours. (Tr. 3924-25). During the infusions, Claimant usually gets a headache that can last one to two days after the infusion. (*Id.*). She is controlling her diabetes but trying a new medication because her blood sugars have been running high. (Tr. 3928-29). Her back pain has worsened

recently, possibly from lifting her eighteen-month-old grandson. (Tr. 3926-27). She estimates she can walk for about 15 to 20 minutes before her back spasms and sit for 15-20 minutes. (Tr. 3930). Lifting an object more than five pounds causes pain in her lower back and hips. (Tr. 3931). Being active and exerting herself makes the pain worse. (Tr. 3932). To ease the pain, Claimant takes muscle relaxers and ibuprofen and lays down once or twice a day. (Tr. 3931). She tries to sweep, vacuum, and mop at her house, but avoids it when her granddaughter can help. (Tr. 3935). At the advice of her physical therapist, she has used a cane for about three years to help with walking around and avoiding obstacles. (Tr. 3936). Her visual field has decreased in the last couple of years. (Tr. 3922).

As for mental impairments, Claimant testifies to having anxiety and depression, but says medication helps. (Tr. 3938). She avoids large crowds if possible and tries to grocery shop early in the morning. (*Id.*).

In determining Claimant was not entitled to benefits, ALJ Collins applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since March 15, 2013, the alleged onset date. (Tr. 3880). Second, Claimant has the following severe impairments: "right ankle fracture, status-post open reduction internal fixation; bilateral shoulder osteoarthritis; degenerative disc disease; seizures; multiple sclerosis; diabetes mellitus, with bilateral proliferative diabetic retinopathy, right homonymous hemianopsia, and optic nerve lesion, with field of vision loss; bipolar disorder; and anxiety." (Tr. 3880-81). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 3881-84). At Step Four, ALJ

Collins found Claimant has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [S]he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, and scaffolds. She could never reach overhead with the bilateral upper extremities. She could sit or stand at 30-minute intervals, taking 1-2 minutes to change positions while staying on task. She must avoid all exposure to dangerous machinery or unprotected heights. She could only perform jobs that require no precise depth perception. She could not perform fine visual activity, such as threading a needle or reading fine print of 10 font or smaller. She could only perform work that involves no required peripheral vision on the right side. She could perform simple, routine tasks with simple work-related decisions and few, if any, workplace changes, in two-hour segments out of an eight-hour workday. She could have occasional contact with supervisors and coworkers, and no public contact.

(Tr. 3884-92). Additionally at Step Four, ALJ Collins found Claimant had no past relevant work to consider. (Tr. 3892). Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Collins found there are jobs existing in significant numbers in the national economy that Claimant can perform. (*Id.*). ALJ Collins concluded Claimant has not been under a disability from March 15, 2013, through the date of the decision. (Tr. 3893).

Claimant administratively appealed ALJ Collins' decision. The Appeals Council declined review. At that point, ALJ Collins' denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant

numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Claimant presents five claims of error from ALJ Collins' decision. (DN 12, at PageID # 5619-20). First, she argues ALJ Collins gave "great weight" to Dr. Sahner's medical opinions but then failed to account for all necessary functional limitations in the RFC. (*Id.*). Second, Claimant asserts ALJ Collins accepted a limitation that Claimant "could not avoid ordinary hazards in the workplace" from Dr. Shah but then failed to account for a correlating functional limitation in the RFC. (*Id.*). Claimant next submits that ALJ Collins failed to consider her inability to drive in analyzing and forming the RFC. (*Id.*). Fourth, Claimant alleges ALJ Collins impermissibly "played

doctor" by formulating social limitations without any supporting medical opinion or explanation as to how such limitations were assessed. (*Id.*). Lastly, Plaintiff states disability benefits should be awarded because her case has been pending for nearly ten years and the Commissioner "is not entitled to adjudicate a case *ad infinitum*." (*Id.*).

A. ALJ Collins' Evaluation of Dr. Sahner's Medical Opinion

Dr. Crystal Sahner performed a mental consultative examination of Claimant on February 19, 2016. (Tr. 1184-87). Following the examination, Dr. Sahner determined that Claimant had the following limitations:

- Ability to understand[,] remember[,] and carry out simple repetitive task [sic] appears adequate given there is not a long delay between task and instruction.

- Ability to tolerate the stress and pressure of day-to-day employment and adapt to routine changes on a consistent basis, cognitively and emotionally would appear to be moderately affected given the claimant continues current psychiatric treatment, and there was some flexibility in the workplace to take a break when becoming overly anxious.

- Ability to sustain attention and concentration on simple repetitive tasks, cognitively and emotionally on a consistent basis would appear to be moderately affected given the claimant continues her current psychiatric treatment.

(Tr. 1187).

ALJ Collins gave "great weight" to Dr. Sahner's opinion, stating that "it is generally consistent with the medical evidence of record." (Tr. 3891). He indicated that Claimant has shown some deficits in memory and attention/concentration but that such deficits "are accounted for with the limitation to simple work given the deficits are only intermittently noted." (Tr. 3891). ALJ Collins further indicated he did not adopt the qualifier that "there is not a long delay between task

and instruction" because the statement was vague and not couched in agency accepted terms and because the RFC accounts for this by limiting Claimant to simple, routine tasks. (*Id.*). Although noting that Claimant has been observed to have abnormal moods and irritability, ALJ Collins discussed that Claimant has not required inpatient treatment, has been able to maintain generally stable mental status findings throughout treatment, and has engaged in an array of activities including extensive travel and caring for her grandchildren. (*Id.*). Concluding his review of Dr. Sahner's opinion, ALJ Collins stated that "no more than moderate limitations as opined by the examiner appear appropriate." (*Id.*).

> ALJ Collins included the following mental limitations in the RFC assessment:

> She could perform simple, routine tasks with simple work-related decisions and few, if any, workplace changes, in two-hour segments out of an eight-hour workday. She could have occasional contact with supervisors and coworkers, and no public contact.

(Tr. 3884).

Claimant argues that because ALJ Collins gave "great weight" to Dr. Sahner's opinion, he should have "adequately accounted for" her opined limitations in his RFC. (DN 12, at PageID # 5626-27). Claimant argues "there is nothing in the RFC" addressing Claimant's need to perform simple tasks "with short delays between the instructions being given and the performance of tasks." (*Id.*). Also missing from the RFC, according to Claimant, is anything addressing Claimant's need to have "some flexibility in the workplace to take a break when becoming overly anxious*,"* or any consideration of the need for unscheduled breaks or additional time off task. (*Id.* at PageID # 5627-28). Claimant further asserts ALJ Collins did not account for any concentration difficulties related to even simple tasks in the RFC despite Dr. Sahner's finding that Claimant was moderately limited in her "ability to sustain attention and concentration on simple repetitive tasks." (*Id.* at PageID #

5628-29). These failures, Claimant argues, are not harmless because each limitation, if properly adopted, could have changed the outcome of the case. (*Id.* at PageID # 5629).

The Commissioner responds that ALJ Collins properly evaluated Dr. Sahner's opinion under the applicable regulations. (DN 20, at PageID # 5676-76). The Commissioner reasons that ALJs are not required to adopt a physician's limitations verbatim, even where the ALJ has afforded the opinion significant weight. (*Id.* at PageID # 5677-78). Per the Commissioner, instead of adopting Dr. Sahner's somewhat vague allegations as to allowing flexibility in taking breaks or limiting time between instruction and tasks, ALJ Collins included additional limitations beyond Dr. Sahner's assessments, which accounted for her depressed mood, trouble concentrating, memory problems, irritability, and panic attacks. (*Id.* at PageID # 5678).

In her reply, Claimant highlights how ALJ Collins committed this same error when Claimant previously sought judicial review and was granted a voluntary remand by the Commissioner. Claimant concludes that had ALJ Collins properly incorporated Dr. Sahner's limitations into the RFC and hypothetical questions, they would likely result in a finding of disability. (*Id.* at PageID # 5726).

As stated by the Commissioner, an ALJ is not required to adopt a physician's opinion verbatim or adopt opined limitations wholesale, even where the ALJ assigns the opinion "great weight." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *Chapman v. Comm'r of Soc. Sec.*, No. 1:18 CV 1616, 2019 WL 5557525, at *3 (N.D. Ohio Oct. 23, 2019); *Rhodes v. Comm'r of Soc. Sec.*, No. 3:17-CV-167-RGJ-CHL, 2019 WL 7643879, at *5 (W.D. Ky. Mar. 7, 2019) ("regardless of the weight assigned to the opinion, an ALJ is not required to adopt the same verbatim."). Nor is an ALJ required to discuss each and every limitation from a physician's opinion

8

that he adopts, fails to adopt, or adopts or rejects on broader grounds. *Tyrian C. v. Kijakazi*, No. 3:21-CV-00568-RGJ, 2023 WL 310179, at *7 (W.D. Ky. Jan. 3, 2023) (citing *Williams v. Comm'r of Soc. Sec.*, No. 1:20-cv-11567, 2021 WL 3524115, at *5 (E.D. Mich. June 23, 2021) (rejecting argument that ALJ should have individually evaluated each limitation in a medical opinion because ALJ indirectly did so by finding the opinion persuasive based on its consistency with the evidence as a whole) (add'l citations omitted)).

Moreover, the regulations that applied at the time Claimant filed her application for benefits did not demand further analysis by ALJ Collins of Dr. Sahner's opinion. Because Claimant's applications for benefits were filed before March 27, 2017, the prior regulations at 20 C.F.R. §§ 404.1527 and 416.927 govern the ALJ's evaluation of medical opinions. Those regulations directed ALJs to consider medical opinions differently based on the type of medical source offering the opinion. Opinions from treating physicians were subject to the "treating physician rule," which required ALJs give controlling weight to such opinions if they were "well supported by medically acceptable clinical and laboratory diagnostic techniques" and were not "inconsistent with the other substantial evidence in the record." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). ALJs were also subject to the "good reasons rule," which required an ALJ to give good reasons for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

For non-treating-source opinions, the regulations directed ALJs to "consider" six factors: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors tending to support or contract the medical opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Yet the ALJ "need not perform an exhaustive, step-by-step analysis of each

factor." *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 587 U.S. 97 (2019); *Gambrell v. Comm'r of Soc. Sec.*, No. 1:08-cv-557, 2010 WL 2757111, at *1 (W.D. Mich. July 12, 2010). Where an ALJ failed to formalistically discuss each factor, the ALJ could still meet the policy objectives of the procedural requirement of these factors by ensuring the "adequacy of review and permit[ing] the clamant to understand the disposition of his case." *Lorrison v. Berryhill*, No. 18-cv-10289, 2019 WL 1324247, at *2 (E.D. Mich. Mar. 25, 2019) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010)). The heightened "good reasons" requirement did not apply to non-treating-source opinions, meaning ALJs were not required to include, or even explain, the omission of a limitation from such an opinion. *See Chapman*, 2019 WL 5557525, at *3 (citing *Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-cv-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) (citing *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255 (6th Cir. 2016) (finding "the reasons-giving requirement is inapplicable" to non-treating source opinions))).

Dr. Sahner is a non-treating source; she performed a one-time consultative examination of Claimant. ALJ Collins, accordingly, was not required to provide specific reasons for the omission of any limitations from her opinion in the RFC determination. ALJ Collins was only required to consider the six factors in 20 C.F.R. § 404.1527(c). He did so. ALJ Collins identified that Dr. Sahner was a psychological consultative examiner, which reflects consideration of factors (1), (2), and (6). (Tr. 3891). And ALJ Collins discussed the opinion's general consistency with the overall medical evidence of record. Although ALJ Collins did not reference the "supportability" factor, his analysis proves he considered the supportability of her opinion, not only by affording it great weight but also identifying specific qualifiers or limitations that would not be adopted. (Tr. 3891).

Any error from not explicitly discussing the internal supportability of Dr. Sahner's opinion is, therefore, harmless.

Claimant attempts to avoid ALJ Collins' compliance with the applicable regulations by arguing he failed to build "an accurate and logical bridge" between Dr. Sahner's limitations and his conclusions. This general standard appears to originate from the Seventh Circuit. Under this line of cases, an ALJ's decision may not be upheld "if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (citing *Green v. Shalala*, 51 F.3d 96, 100-01 (7th Cir. 1995); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (add'l citations omitted)). Although the Sixth Circuit has not spoken on the applicability of this standard, district courts within have applied this standard, requiring ALJs to provide a discussion at each step "that permits meaningful review of the decision" by building "an accurate and logical bridge between the evidence" and the ALJ's conclusion. *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 764 (N.D. Ohio Dec. 4, 2019) (quoting *Boose v. Comm'r of Soc. Sec.*, No. 3:16cv2368, 2017 WL 3405700, at *7 (N.D. Ohio June 30, 2017); *Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014)); *see also Alston Z. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00710-RSE, 2025 WL 2779152, at *5 (W.D. Ky. Sept. 26, 2025).

Claimant says ALJ Collins did not form a logical and accurate bridge because he failed to consider Dr. Sahner's findings that Claimant could perform simple tasks "with short delays between the instructions being given and the performance of tasks[;]" that she needs "some flexibility in the workplace to take a break when becoming overly anxious[;]" and that she has moderate limitation in her "ability to sustain concentration on simple repetitive tasks." The Court

questions the applicability to the accurate-and-logical bridge standard when an ALJ has complied with the pertinent regulations for evaluating opinion evidence. Yet even assuming such a standard applies, Claimant's arguments fail.

ALJ Collins considered Dr. Sahner's limitation that Claimant could perform simple tasks with short delays between the instructions being given and the performance of tasks. She stated that she found no need to "adopt the qualifier that 'there is not a long delay between task and instruction'" because the statement was vague and not couched in agency accepted terms. (Tr. 3891). ALJ Collins further explained that the limitation to simple, routine tasks accounts for such a qualifier. (*Id.*). This constitutes an accurate and logical bridge between the evidence and ALJ Collins' conclusions.

Although ALJ Collins did not explicitly discuss Dr. Sahner's conclusion that Claimant needed flexibility to take breaks when becoming overly anxious, review of his analysis still provides the requisite logical bridge. ALJ Collins noted Claimant's reported abnormal moods and irritability but stated Claimant had not required inpatient treatment, had generally stable mental status findings throughout treatment, and was able to engage in an array of activities that include extensive travel and caring for her grandchildren. (Tr. 3891). Put otherwise, ALJ Collins recognized some evidence of Claimant's abnormal moods and irritability but, based on other evidence in the record, did not find additional limitations were warranted. Such analysis complies with ALJ Collins' obligations.

As for ALJ Collins' omission of discussion on Dr. Sahner's conclusions regarding Claimant's ability to concentrate, the Court once more finds no error. ALJ Collins determined that Dr. Sahner's limitations, including those related to concentration, were generally consistent with the evidence of record, and concluded "no more than moderate limitations as opined by the

examiner appear appropriate." (*Id.*). ALJ Collins reflected such moderate limitations in her RFC, limiting Claimant to performance of "simple, routine tasks with simple work-related decisions and few, if any, workplace changes, in two-hour segments out of an eight-hour workday." Claimant does not demonstrate that additional functional limitation as to concentration is warranted or required.

Lastly, because the Court finds no error from ALJ Collins' evaluation of Dr. Sahner's opinion, the Court likewise finds no error from the ALJ not incorporating the identified restrictions from Dr. Sahner's opinion in his hypothetical examples to the vocational expert. *See Glenda C. v. Kijakazi*, No. 7:22-CV-110-CHB, 2023 WL 7300739, at *8 (E.D. Ky. Nov. 6, 2023).

### B. ALJ Collins' Evaluation of Dr. Shah's Opinion

Dr. Shah, Claimant's treating neurologist, completed a Vision Impairment Medical Source Statement on January 17, 2018. (Tr. 2698-2700). One question on this form evaluation asked – "Is your patient capable of avoiding ordinary hazards in the workplace, such as boxes on the floor, doors ajar, approaching people, or vehicles?" (Tr. 2699). Dr. Shah checked "no" in response. (*Id.*). Over three years later, Dr. Asher Neren responded to interrogatories submitted by ALJ Collins and completed a Medical Statement of Ability to Do Work-Related Activities Physical. (Tr. 3838-44). This questionnaire likewise asked whether Claimant is "able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles." (Tr. 3842). Dr. Neren checked "yes" in response. (*Id.*).

In his RFC assessment, ALJ Collins evaluated both Dr. Shah and Dr. Neren's opinions. He gave Dr. Shah's opinion "partial weight." (Tr. 3890). He then discussed several of Dr. Shah's limitations that are not supported by the evidence, including the need for unscheduled breaks, being off task, only rarely stooping, crouching, and squatting, and difficulty walking up or down

stairs. (*Id.*). ALJ Collins mentioned that Dr. Shah opined Claimant could not avoid ordinary hazards in the workplace but provided no further discussion on this limitation. (*Id.*).

ALJ Collins also gave "partial weight" to Dr. Neren's opinion. (Tr. 3890-91). He recognized Dr. Neren's opinion that Claimant could avoid ordinary hazards in the workplace and other vision related limitations. (Tr. 3890). ALJ Collins then explained that "[w]hile the claimant has not required specialized treatment for her vision loss in some time, there was sufficient evidence for continual field of vision loss and acuity loss to support the claimant would struggle with fine visual acuity tasks and tasks requiring peripheral vision off the right side." (Tr. 3890-91). ALJ Collins concluded that Dr. Neren's opinion "correctly restricts the claimant from exposure to unprotected heights and dangerous machinery, which is consistent with her loss of field of vision." (Tr. 3891).

In the same vein as her claim regarding Dr. Sahner's opinion, Claimant argues ALJ Collins accepted a limitation from Dr. Shah's opinion – that Claimant "could <u>not</u> avoid ordinary hazards in the workplace" – but did not adopt such limitation in the RFC and otherwise failed to explain why such limitation was not included. (DN 12, at PageID # 5633-34). This limitation, Claimant explains, is supported by her visual impairments and ALJ Collins' determinations that Claimant can only perform jobs requiring no precise depth perception, no fine visual acuity, and that she cannot read fine print of a font 10 point or smaller. (*Id.*. at PageID # 5634-35). Because substantial evidence in the record supports Claimant's significant visual limitations, Claimant argues ALJ Collins was required to account for Dr. Shah's limitation regarding avoidance of ordinary hazards in the RFC. (*Id.*).

Claimant recognizes that Dr. Neren's opinion contrarily opines that she *could avoid* ordinary hazards. Yet Claimant clarifies that ALJ Collins gave Dr. Neren's opinion only partial

14

weight and "clearly rejects" Dr. Neren's non-limitation on avoiding ordinary hazards. (*Id.* at PageID # 5635-36). According to Claimant, even if ALJ Collins accepted both Dr. Shah and Dr. Neren's contrary opinions, such acceptance would result in an internal inconsistency never resolved by ALJ Collins. (*Id.* at PageID # 5636-37). Claimant, however, encourages the Court to read the decision as ALJ Collins accepting the treating neurologist's opinion but then failing to account for the "ordinary hazards" limitation in the RFC. (*Id.* at PageID # 5637).

The Commissioner responds that ALJ Collins properly evaluated Dr. Shah's opinion under the regulations and provided good reasons for only assigning it partial weight. (DN 20, at PageID # 5679-80). The Commissioner reiterates that an ALJ is not obligated to adopt every limitation from an opinion, especially where the opinion was given only partial weight. (*Id.*). According to the Commissioner, ALJ Collins acknowledged evidence of Claimant's eye impairments but found that her treatment with eye specialists became more sporadic in 2018 and 2019 and that she had 20/25 vision in May 2019 with a visual field full to confrontation. (*Id.* at PageID # 5680-81). Because ALJ Collins ultimately limited Claimant to work with no exposure to dangerous machinery, no exposure to unprotected heights, no need for precise depth perception, no use of fine visual acuity (such a threading a needle or reading fine print), and no need for peripheral vision on the right side, the Commissioner asserts these restrictive findings reasonably account for Claimant's visual impairments. (*Id.*). The Commissioner does not address the contrary restriction from Dr. Neren's opinion.

In reply, Claimant states the Commissioner "fundamentally mischaracterizes the legal error" by arguing the ALJ was not required to adopt limitations from a "partially persuasive" opinion. (DN 22, at PageID # 5717-18). She again relies on the "accurate and logical bridge" standard, asserting that ALJ Collins established no connection between his finding that Claimant

has "sufficient evidence of continual field of vision loss," yet concluding Claimant could work without any hazard avoidance limitations. (*Id.*). Additionally, Claimant reasserts error based on ALJ Collins' failure to reconcile the conflict between Dr. Shah and Dr. Neren's opinion on this "critical limitation." (*Id.* at PageID # 5718-19).

Agreeing with the Commissioner, the Court finds ALJ Collins properly evaluated Dr. Shah's opinion pursuant to the regulations. Again, the treating-physician rule required ALJs give controlling weight to such opinions if they were "well supported by medically acceptable clinical and laboratory diagnostic techniques" and were not "inconsistent with the other substantial evidence in the record." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). When an ALJ declined to afford controlling weight to a treating source, opinion, he was required to evaluate the opinion using the factors 20 C.F.R. § 404.1527(c)(1)-(6) and provide "good reasons" for the weight given to the opinion. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

ALJ Collins noted that Dr. Shah was Claimant's treating neurologist and recounted her opined limitations, including that Claimant could not avoid ordinary hazards in the workplace. (Tr. 3890). He assigned Dr. Shah's opinion "partial weight," explaining that several limitations were not supported by Claimant's normal musculoskeletal and neurological exams and her wide array of daily activities. (*Id.*). He also found that Dr. Shah's limitations as to difficulty walking up or down stairs and standing or walking for long distances were not "specific, function-by-function limitation[s]." (*Id.*). This analysis demonstrates ALJ Collins considering factors from 20 C.F.R. § 404.1527(c)(1)-(6) and providing "good reasons" for affording Dr. Shah's opinion partial weight.

That ALJ Collins did not specifically analyze Dr. Shah's limitation that Claimant could not avoid ordinary hazards in the workplace does not change this conclusion. Once more, an ALJ is not required to address every limitation from a physician's opinion in determining the opinion's weight. And ALJ Collins' failure to specifically analyze Dr. Shah's limitation that Claimant could not avoid ordinary hazards in the workplace does not constitute an adoption of such limitation. Likewise, ALJ Collins' failure to analyze Dr. Neren's contrary restriction does not constitute adoption of such restriction.

While ALJ Collins did not explicitly resolve the conflict between Dr. Shah and Dr. Neren's restrictions, review of ALJ Collins' RFC reveals that he assigned both opinions partial weight and ultimately crafted vision-related restrictions in the RFC. ALJ Collins thoroughly reviewed the evidence of record related to Claimant's "concomitant impairments impacting her vision." (Tr. 3887). He recognized that Claimant has vision loss and visual field loss requiring jobs with no precise depth perception, no fine visual acuity, such as threading a needle or reading fine print or smaller, and no required peripheral vision on the right side. (Tr. 3888). ALJ Collins also determined Claimant's history of balance issues and epilepsy, combined with her field of vision loss, required avoidance of all exposure to dangerous machinery and unprotected heights. (*Id.*). Yet ALJ Collins also considered that Claimant's treatment with eye specialists became more sporadic in 2018 and 2019 and that she had 20/25 vision in May 2019 with a visual field full to confrontation.

This analysis demonstrates that ALJ Collins considered Claimant's vision and balance in relation to hazards in the workplace and imposed functional limitations based on the overall evidence in the record. ALJ Collins, accordingly, provided a logical bridge between the evidence and his conclusions, and no error results.

C. ALJ Collins' Failure to Consider Claimant's Inability to Drive in the RFC

Claimant argues the medical evidence demonstrates she was restricted from driving given the extent of her visual field defect. (DN 12, at PageID # 5638-39). According to Claimant, ALJ Collins accepted her severe visual limitations and the uncontroverted functional limitation as to driving but failed to account for such limitation in the RFC. (*Id.*). Citing to the Program Operations Manual System (POMS), Claimant asserts that an ability to maintain regular attendance is critical for unskilled work and being unable to drive impacts whether Claimant can maintain regular attendance. (*Id.* at PageID # 5639). Claimant also notes that driving could be required for certain tasks while at work. (*Id.*).

The Commissioner responds that ALJ Collins explained his reasons, grounded in substantial evidence, for the RFC he assessed. (DN 20, at PageID # 5681). Even so, the Commissioner explains that whether a Claimant needs to commute to work is immaterial to the disability determination under the Act. (*Id.* (citing *Mingus v. Comm'r of Soc. Sec.*, 188 F.3d 508, 1999 WL 644341, at *4-5 (6th Cir. 1999); 20 C.F.R. § 404.1545(a)(1))). The Commissioner additionally notes that Claimant's speculation that some jobs may require driving is immaterial, since the occupations relied upon by the ALJ at Step Five do not involve driving as a work requirement from the Dictionary of Occupational Titles.[2] (*Id.* (citing DOT 689.687.010 (bagging salvager); DOT 222.687-014 (garment sorter); DOT 209.687-026 (mail clerk, non-postal), DOT 309.367-010 (house sitter))).

As stated by the Commissioner, travel factors, including a claimant's ability to drive, are generally not relevant to the disability determination. *Mingus*, 1999 WL 644341, at *4-5 (citing *Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999)); *see also Saad v. Comm'r of Soc. Sec.*, No. 07-

---

[2] Claimant did not address this argument in her reply brief.

18

15506, 2009 WL 454650, at *8, n.4 (E.D. Mich. Feb. 24, 2009) ("[U]nder 20 C.F.R. § 404.1566(c)(1)-(2), if a claimant is determined to be not disabled based on his residual functional capacity and vocational abilities, it is immaterial whether the claimant actually can get work or that there is a lack of work in the local area. Thus, plaintiff's driving restrictions – whether interpreted as only being able to commute a short distance or not drive at all – appear to have no impact on the determination of disability."). And review of the DOT job titles relied upon by the ALJ at Step Five reveal none involve driving as a work requirement. The Court, therefore, finds no error with ALJ Collins' failure to discuss Claimant's inability to drive in the RFC analysis.

### D. ALJ Collins' Implementation of Social Limitations in the RFC

ALJ Collins limited Claimant in the RFC to "occasional contact with supervisors and coworkers, and no public contact." (Tr. 3885). In doing so, Claimant alleges ALJ Collins did not rely upon any medical opinion of record and formulated such limitations based on his own review of the medical records. (DN 12, at PageID # 5642). She takes issue with ALJ Collins rejecting medical opinions that assessed no social limitations. (*Id.*). Claimant also finds error with ALJ Collins failing to explain how he formulated these social limitations and why there is a difference between her level of contact with supervisors and coworkers versus the public. (*Id.*). Without any explanation regarding these limitations, Claimant argues ALJ Collins provided an insufficient path of reasoning not supported by substantial evidence. (*Id.* at PageID # 5643).

The Commissioner asserts that the RFC determination is expressly reserved for the ALJ and that evidence supporting the RFC need not take the form of a medical opinion. (DN 20, at PageID # 5862). The Commissioner emphasizes that by promulgating more restrictive social limitations than any physician opined, ALJ Collins found more favorably for Claimant. (*Id.*). Because ALJ Collins properly weighed the opinion evidence and considered other factors for

evaluating the consistency of Claimant's complaints with the evidence in the record, the Commissioner concludes his assessment is supported by substantial evidence and should be affirmed. (*Id.*).

In reply, Claimant asserts ALJ Collins' formulation of social limitations violates Sixth Circuit precent requiring a medical foundation for the addition of functional limitations to an RFC. (DN 22, at PageID # 5719 (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013))). Claimant argues that by failing to provide a medical basis for the opined social limitations, ALJ Collins impermissibly "played doctor," which results in reversible error. (*Id.* at PageID # 5720-21).

At the outset, Claimant's argument is perplexing because she seems to challenge ALJ Collins finding *more restrictive* social limitations in the RFC than any physician opined. Courts generally find when an ALJ's RFC is more restrictive than opinions expressed by physicians, that "the ALJ's departure from the opinions [is], at most, harmless error." *Saxton v. Comm'r of Soc. Sec. Admin.*, No. 1:24-cv-1571, 2025 WL 2027553, at *4 (N.D. Ohio July 21, 2025) (citing *Ferris v. Comm'r of Soc. Sec.*, No. 5:16-cv-2459, 2017 WL 5187796, at *11 n.4 (N.D. Ohio Nov. 8, 2017)); *Lee M. v. Bisignano*, No. 3:24-CV-00615, 2025 WL 2164548, at *5 (W.D. Ky. July 30, 2025) (collecting cases).

Even so, no error stemmed from ALJ Collins' social limitations in the RFC. In assessing a claimant's RFC, the ALJ may only base restrictions on "functional limitations . . . that result from an individual's medically determinable impairment or combination of impairments." SSR 96-8p, 1996 WL 374184, at *1. ALJ Collins properly weighed the evidence of record to find Claimant was more socially limited than any physician had opined. He considered Claimant's primary care provider repeatedly describing her as cooperative with appropriate mood and affect

and normal judgment over several years. (Tr. 3889 (citing Ex. 5F, pp. 19, 27, 43; 11F, p. 10; 13F pp. 21, 52, 86; 14F pp. 17, 48; 17F pp. 53, 99; 18F, pp. 11, 47, 31F, p. 10)). He explained that he accounted for her reports from early 2014 of fear of crowds, panic attacks, phobias, and obsessions by restricting the kind of contact she could have with others. (*Id.* (Citing Ex. 8F, p. 24)). ALJ Collins noted that despite these records, Claimant "appears to have responded to treatment well," described enjoying travel to Hawaii in 2014, reported "wanting to party more" than her partner on the 2014 trip, taking additional month-long trips to Hawaii in 2016 and after, and trips to South Africa. (*Id.*). Claimant's improvement, with no deficits during examinations in 2015, was also considered by ALJ Collins. (*Id.* (citing Exs. 8F, p. 29; 12F, pp. 34, 39, 43; 20F, p. 20)).

None of this demonstrates that ALJ Collins impermissibly played doctor. He reviewed the medical evidence, as well as Claimant's subjective reports, and the physicians' opinions, and based the functional limitations in the RFC from Claimant's well supported medically determinable impairments. No error results.

### E. Claimant's Entitlement to Benefits based on Delay and Multiple Remands

As laid out in Section I above, Claimant's case has been pending for over ten years and has been remanded to the Commissioner for a new hearing and decision on three occasions. Claimant believes she is entitled to an award of benefits based on this extensive delay and the fact that the Commissioner has been unable to render an error-free decision thus far. (DN 12, at PageID # 5641-43). Citing to a handful of cases, Claimant argues the Commissioner "is not entitled to adjudicate a case *ad infinitum* until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion." (DN 12, at PageID # 5645 (citing *Sisco v. US Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (citation and quotation marks omitted); *Railey v. Apfel*,

134 F.3d 383 (10th Cir. 1998))). Claimant also finds it egregious that ALJ Collins' most recent opinion did not correct errors that were raised in the prior federal appeal. (*Id.* at PageID # 5647).

The Commissioner argues that delay alone does not warrant an award of benefits where all factual issues have not been resolved. (DN 20, at PageID # 5685 (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 840 (6th Cir. 2016))). The Commissioner states there is no statutory provision for awarding benefits to punish the Commissioner for a delay or regrettable errors during the administrative adjudication of a claim. (*Id.*). Because ALJ Collins reasonably determined Claimant does not meet the legal definition of disability and benefits cannot be paid from the Social Security trust fund unless the legal definition is met, the Commissioner maintains ALJ Collins' decision should be affirmed and benefits be denied. (*Id.*).

In reply, Claimant alleges that Dr. Sahner's opinion contains specific limitations that if properly incorporated would have rendered her disabled and this "strong evidence of disability" warrants a remand. (DN 22, at PageID # 5725-27). The "repeated legal errors and demonstrated administrative incompetence despite specific federal court guidance," Claimant argues, requires an award of benefits. (*Id.* (emphasis removed)).

Claimant's decade-long journey trying to secure disability benefits is vexing. But the Commissioner is correct that delay alone, even when egregious, does not warrant an award of benefits when the disability standards have not been met. None of the cases cited by Claimant awarded benefits based on delay alone. For instance, in *Campbell v. Colvin*, the Southern District of Ohio reversed the ALJ's decision and awarded benefits where evidence of Plaintiff's disability was "overwhelming or strong," contrary to the ALJ's decision, and there was no "just reason to further delay" the eight-year-old case. No. 315cv00363, 2016 WL 6581336, at *3 (S.D. Ohio Nov. 7, 2016). Similarly, the same court in *Samantha K. v. Commissioner of Social Security* determined

based on the Commissioner's "patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Commissioner's pattern of erroneous dispositions of the proceedings in the case," that the ALJ's decision should be reversed and judicial benefits be awarded. No. 323-cv-268, 2024 WL 2826434, at *15 (S.D. Ohio June 4, 2024). Likewise, in *Gentry v. Commissioner of Social Security*, the Sixth Circuit found the ALJ's errors, when viewed in light of the substantial evidence on the record as a whole, and two remands and three administrative hearings having occurred previously, warranted reversal and an award of benefits. 741 F.3d 708, 730 (6th Cir. 2014).

The Court here does not find error in ALJ Collins' decision and does not find evidence of Claimant's disability to be overwhelming or substantial to where an award of benefits would be a forgone conclusion. Claimant believes Dr. Sahner's opinion provides substantial evidence supporting disability. But, as analyzed above, Dr. Sahner opined no more than moderate mental limitations for Claimant, and ALJ Collins properly evaluated the opinion under the regulations. Moreover, ALJ Collins found Dr. Sahner's opinion was entitled to great weight and provided an accurate and logical bridge between her limitations and his RFC conclusions. Dr. Sahner's opinion does not constitute substantial evidence of disability.

While the Court does not condone disability evaluation lasting for ten years or requiring three remands before an error-free decision is reached, the circumstances here do not justify an award of benefits.

**ORDER**

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel of Record